v. Castillo. Ms. Gonzalez. May it please the Court, Attorney Caldi-Gonzalez, on behalf of Appellant Mr. Rodney Guerra, this appeal concerns qualified immunity in the First Amendment, specifically whether an official is entitled to qualified immunity after they falsely accuse, falsely arrest, suspend, and terminate the employment of an officer for refusing to instruct a subordinate patrol officer to facilitate the drop of DWI charges against a political supporter of said official. The first false charge was that of theft of eyeglasses. The second false charge is the felony of tampering with evidence. These false charges lacked probable cause and were initiated by Appellee Castillo and led to the creation of fabricated arrest warrants. Appellant was falsely arrested twice and Appellee subsequently deprived Appellant of his liberty interests. So the key for us is the word initiated, right? Correct. Because Lopez signs the theft affidavit. Correct. And Perez, is Perez the one who files the tampering affidavit? Yes, Your Honor. Not Castillo. Right, but it was orchestrated. It is our opinion that he orchestrated. But we've, you agree with our case law, we've really wrestled with whether orchestrated and initiated can sweep in a supervisor without it being just vicarious liability, correct? I understand that, Judge. So what case are you relying on? I'm relying more on Cox in the First Amendment. Let's not get to the First Amendment because you're saying that, you're saying that the arrest warrant here lacked probable cause. Correct. And it lacked probable cause because Castillo said file those affidavits, get him arrested, and then when the district court said clarify what, what, what taint's going on here, you clarified and said, tell me if I'm right, you clarified and said that he knew there was no probable cause. Right, so let me give you some context on that. There was a patrol officer around the same time, officer. We know the story about the Ray-Bans, we know all the facts. Okay. The legal question is, let me just direct you to it, our Embank-Melton decision, do you rely on that as clearly established law saying that Police Chief Castillo can, you can assert a Frank's claim against him even though he didn't sign these affidavits? I, yes. Go ahead. I'm sorry. I do believe that, Judge, in that the appellee, I believe, wrongfully asserts here that they, that the taint exception did not apply, when I believe that it did apply. I know the case that you're referring to says that the officer did not present or sign the affidavit. Liability attaches only if he helped prepare the complaint by providing information for use in it. So he was providing information for use of that. And he knew, without a doubt, that there was no... The district court disagreed and it cited that pre-Melton Hampton case, correct? Correct. But you didn't, in your brief, discuss Hampton. Why? I believed that before it even got to that, the judge made, or committed error, in that he allowed the qualified immunity defense to be So that's also what I'm asserting as well. He... The defendant is basically saying, I didn't have fair notice that my not telling the magistrate, personally, that there's no probable cause, would still subject me to possible Frank's liability. But, you know, Your Honor, both of those cases were no billed and dismissed for causation of that, was because he did not listen to his commanding officer, and that his political association, he wanted him to carry out this order unlawfully because of his political ally. And he refused to do that. Right now, we have officers with unfettered power and, you know, abusing their power. And we have this officer, who's been on the force for over 20 years, and he did what he was told his officer. You know what? I don't care what he says. That was unlawful for the DWI. You arrest him. I don't care what anybody else says. So, you know, here we are, having a police officer doing the right thing and setting a good precedent for all other police officers, when right now, in our nation, we just had, one month ago, Tyree Nichols. Well, elsewhere, that's not going to be relevant here. I'm trying to focus you on the false arrest claim, but you're pushing to the First Amendment claim. What case do you have when a police officer refuses an order that's equivalent to First Amendment protected speech? What's your best case for that? I believe, Judge, in this instance, it's more of the interest of justice and for us to try to set maybe a new precedent. Okay, that's all right. You know, and I believe that just because there isn't a case for that specifically, with facts completely on point to that, it's before you right now to maybe set a new precedent. Because this isn't just a regular citizen. This is someone who's been on the force for over 20 years, and as a result of not doing that, he lost his pension. He hasn't been able to get a job as an officer in our community. He's disparaged his name, tarnished his reputation, and he's stuck. He's stuck. He cannot practice what he has been doing. You know, he lost his livelihood. He lost his liberty interest, which is his pension. All right, go ahead. Go on with your legal argument. Yes, the court should vacate the district court's order granting Apelli-Gastillo's 12C motion for judgment on the pleadings because the court clearly erred when it granted Apelli's City of Alamos 12B6 motion to dismiss for failure to state a claim. The court relied on clearly erroneous factual findings. Apellin's claim has facial plausibility at the district court phase, and that his pleadings allowed the court to draw the reasonable inference that defendant is liable for the misconduct alleged. The district court erred when it granted Gastillo qualified immunity from Guerra's claims against him when Gastillo failed to first establish that he was acting within the scope of his discretionary authority while violating Guerra's First Amendment right to freedom of speech and association and his Fourth Amendment right to be free from arrest without probable cause malicious prosecution claim. The district court erred by prematurely dismissing Guerra's section 1983 claim of malicious prosecution when it misapplied the Frank's liability test and ruled Guerra failed to plead fact-sufficient to support a finding that Gastillo provided false information to support the issuance of the unlawful warrants that led to both of Guerra's false arrests. To state a claim under section 1983, a plaintiff must allege a violation of a right secured by the Constitution and law of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. Here, Apelli was acting under color of state law. He was doing something that he knew he shouldn't have done. He knew that those eyeglasses were never inventoried as evidence in a crime. He knew that officer Perselli told him to just throw the eyeglasses away. So he knew that there was no theft charge. There was no intent to permanently deprive them of any, you know, of the eyeglasses. You know, moreover, the tampering with evidence, there's no basis for that. He knew that that was untrue and instead he mis-abused power. He misused his position because he wanted to set an example that whatever I say goes. And he sent a message to all other officers, I don't care how long you've been on the force, this could be you if you don't do what I say. I don't think that is a good precedent, you know, to be set and it makes police officers feel that they have to do whatever is being asked of them. Whether that's by the rule of law, their code of ethics, they feel undue influence because it's their livelihood. What's going to happen to their family if their pensions taken away? What's going to happen to their Children? And you're putting police officers in a horrible position to have to compromise their morality or what their commanding officers telling them to do. Let me this question. Isn't there some recourse in appealing his dismissal under the state law? So he was offered or he asked. Rather, he requested an administrative hearing to clear his name. He was denied one. He was suspended and then he was terminated. So he never got a chance at a name clearing hearing administratively. So it's been so long, but I thought there were state laws that allowed employees in your client's position to appeal that and say I was wrongfully terminated. Didn't they? They request they denied any request for relief. And there's no right to appeal that. Um, I'm sure I don't know how to answer that, Your Honor. Here, appellant suffered three adverse employment decisions that amounted to retaliation in the employment relationship against appellant. He was placed on administrative leave. He was suspended and terminated from employment. Appellants Political Association is the speech that's the matter of public concern. Appellants refusal to instruct the patrol officer to drop the DWI charge and appellant Castillo's political ally motivated appellant Castillo's actions. So here he was deprived of a liberty interest protected by the 14th Amendment, which gave rise to the name clearing hearing. Appellant properly pled that he was employed as a police officer for 20 years. The appellant Castillo contacted local media news outlets to have them appear at his arraignment to publicize those false charges, which stigmatized appellant and harmed his reputation in the community. The false charges brought against him were terminated, you know, the no build and then dismissed the other one, and he was terminated from his job as a result of those false charges. And although appellant requested a hearing to clear his name, he was not afforded notice or an opportunity to be heard because he was refused a hearing by the city manager, who is a representative of Appellee City of Alamo. The result of the stigmatization at the hands of Appellee City of Alamo deprived appellant from his pension as well as lost wages since 2018. In the criminal prosecution context for the First Amendment retaliation claim, appellant's constitutionally protected activity was his political association with commissioners that were not aligned with Appellee Castillo. Appellee Castillo ordered appellant to have the patrol officer drop the DWR charge on the individual that was politically aligned with Appellee. Because the appellant refused, Castillo had him arrested, falsely charged with theft. That charge was no build. Furthermore, the Supreme Court recently held to demonstrate that the favorable termination of a criminal prosecution for purposes of a Fourth Amendment claim under Section 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction and is not required to demonstrate that the prosecution ended with some affirmative indication of innocence, such as an acquittal or dismissal accompanied by a statement from the judge that evidence was insufficient. Are you going to save a little time? Oh, I'll use the rest of my time. No, no, I'm not urging you to sit down. I just haven't heard anything about the dismissal of the city. Do you acknowledge there was no notice of appeal as to that dismissal eight months before the dismissal of Castillo? So I was not the counsel at that time. It's hard for me to put myself in the shoes of what counsel at that stage was thinking. But what's your current position? My current position on that is that that shouldn't have been dismissed. But did you successfully notice it according to the law? That is an issue. I addressed it in my brief that I believe that the court erred in dismissing them prematurely and that we didn't get a chance to, or counsel at that time didn't get a chance to do any discovery or any information on that matter to get more information that would have been helpful for this claim. Thank you. Good morning. May it please the court. My name is John Michael Hayward and I represent defendant appellee Baudillo-Castillo. At all times relevant to this lawsuit, Baudillo-Castillo was the chief of police for the city of Alamo, Texas. Your Honors, this is not a case about disputed facts or novel points of law. This is a case about choices and decisions that were made by the plaintiff at the lower court level. Specifically, after several years of litigation, three lawsuits, a removal, multiple pleading opportunities, defendant Castillo filed his Rule 12c motion for judgment on the pleadings, asking that all claims be dismissed due to a failure to plead as to qualified immunity. The response to this was to abandon many of the claims, specifically the claim for malicious prosecution, and to fail to engage in any of the legal arguments that were presented, most of the times referring the court only back to the complaint that was on file. The court, even seeing this, gave the plaintiffs an opportunity to explain in a clarification, if they could, whether they could meet the elements of false arrest, specifically with the issue regarding the warrants that was discussed previously. Even after doing this and after educating the plaintiff as to Frank's liability, intermediary doctrine, the Tain exception, the response that came back was that defendant Castillo did not prepare, did not sign, did not include anything in the warrants, and furthermore, the court found that defendant Castillo did not explicitly tell a subordinate to put something false in the warrants. I don't see anywhere in the law there's that explicitness requirement. When the complaint was clarified as to this, it sounds like it describes a perfect Frank's claim. I disagree with that, Your Honor, primarily for two reasons. One, the intermediary, excuse me, the intermediary doctrine was never discussed. It was never responded to. There was no argument as to how that affected what happened. And the second thing was, was that. Well, but that would be you raising it. You would be raising it, saying there's an independent intermediary here, the magistrate. That's correct, Your Honor. But therefore, so if you didn't raise it, that doesn't work in your favor. I believe I did discuss that. Okay, so you discussed it, and they clarified that their complaint said your client ordered them to perjure themselves to a magistrate. They knew that the Ray Ban thing was totally made up. That's their allegation. And if you look at Melton, how is that not assisting in the preparation of a false affidavit? If you order someone to file a false affidavit, isn't that the essence of assisting in preparing a false affidavit? No, Your Honor, and this was also discussed. In my opinion, this was also discussed by the district court, not just in Melton, but it found that Melton was not in contrast to Hampton, which was discussed earlier. The problem here is that your brief never relied on Hampton? I didn't because I believed that this issue was fully vetted by the court. I did refer back to the court on this issue. But this was also – Fully vetted by the court? What do you mean by that? You mean in Melton? No, in the other case law that the court provided, Your Honor. So what's your strongest case, other than Hampton, that when a police chief orders subordinates to submit a false affidavit to a court, that's not assisting in the preparation of a false affidavit? Your brief says, well, it's not traceable to him. He didn't explicitly do it. None of those adjectives appear in our Melton decision, do they? That's correct, but the Melton decision does not also expound on that. It does not say that somebody can simply, in this attenuated level, after being given this many opportunities to explain what the connection is, that this was enough. And that's what I'm going on. Guess what I'm pushing on is what could be more than a police chief saying lie to a judge? The only thing he didn't do was sign the affidavit. But the affidavit, at least the Lopez affidavit, refers to Castillo, doesn't it? Your Honor, my understanding of the affidavits and the reasons why they were attached to the clarification was not to show that, and I think this answers your question, is that the affidavits were not attached to show that defendant Castillo actually falsified any information. The affidavits were attached quite simply to support the, I guess, conclusory allegation that the information inside the affidavits were falsified. And that was the problem, and that was something I did bring into reply to that response specifically. And so if I could continue. Before you do, I guess just tell me, are you familiar with any of our case law arising from the Twin Peaks shooting? And specifically, do you know of our Terwilliger case? Off the top of my head, I'm not familiar with that, Your Honor. Yes, sir. Getting back to the argument, Your Honors, the failure to plead a qualified immunity waiver against defendant Castillo continued. After the district court made its order, the plaintiff had at its disposal a numerous amount of post-judgment motions that could have filed for relief if, in fact, it felt that the district court failed to consider something that was in its order. On appeal here today, however, the plaintiff is attempting to appeal numerous things that were not preserved in any type of argument at the lower court. And it's well-settled law here in the Fifth Circuit that if a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that a district court has an opportunity to rule on it, it is not addressed on appeal. And this was FDIC v. Mihalis, 15 Federal 3rd, 1314. Also as recently as 2022 in Templeton v. Jaramillo, and that's 28 Federal 4th, 618, this court stated— What you say precisely was not preserved. I'm sorry, sir? Precisely what you say was not preserved. Yes, ma'am. Yes, Your Honor. Precisely what was not preserved was a discretionary authority argument with respect to qualified immunity. That's number one, and I would like an opportunity to talk about that really quickly. The second one was a malicious prosecution claim, which was not responded to at all. This is very important in the plaintiff's response. And under Southern District Local Rule 7.4, failure to respond is taken as no opposition. But this is also in line with the Fifth Circuit precedent regarding failing to preserve your argument for appeal. Furthermore, going forward to the First Amendment claim, the First Amendment claim, the only response that was made to that was simply to refer the court back to the plaintiff's complaint. Getting back, because it looks like I'm running a little bit out of time, I'd like to discuss just really quickly the discretionary authority argument. Even though this was not preserved, and I think it's very clear, especially in the Templeton case, that this can't be brought up for the first time on appeal. Discretionary authority deals with ministerial acts performed within the bounds of official capacity. We don't have that issue here on appeal. This case is not dealing with whether or not Chief Castillo had an inherent authority to do something, but rather whether he should have done it or he did it a certain way. This discretionary authority argument wouldn't apply anyway. Skipping ahead to, again, I mentioned the malicious prosecutions not properly before the court, but the First Amendment I do want to touch on before I move on. So the First Amendment claim, again, as most of the responses that were made to the Rule 12c motion to dismiss, they only said that, or excuse me, the plaintiff only said to go back to the complaint. So like the defendant did at the lower court level, the court tried very hard to figure out what the actual First Amendment claim was at issue and was actually pretty confused and stated in its order that the plaintiff did not articulate or cite any clearly established right with respect to the First Amendment claim. So the court looked at it and said, well, the only thing we could see that they might be talking about was a First Amendment claim for retaliation in the employment relationship or in the criminal process. The criminal process part is not being appealed here today, but the retaliation in the employment relationship is. The court thoroughly engaged, excuse me, in the plaintiff's complaint and brought up all of the dates, brought up all the instances that were discussed previously with regards to the triggering events over the course of this lawsuit. And the court, looking into all that, found that it did not meet the but-for causation element of the retaliation claim in the employment relationship. The plaintiff's argument to this effect does not disturb this decision, as I believe the only argument that's being made is that they feel that the court did not look at a time gap in between the triggering events. That's actually not correct because, as I stated, the court, the district court, specifically looked at the DWI issue and all the other triggering events. So it's not as if the court was misunderstanding the time frame or anything like that. So in that respect, the First Amendment appeal really only asks this court to have the district court reconsider its own order. And that's something I do want to state really quickly before I move on, is that any type of remand in this issue would just send this case back down with the record that's currently on appeal right now. And as the Fifth Circuit precedent states, these arguments haven't been preserved for consideration on appeal. The same result would happen if it would go back down. Thank you for your time. I ask that this court affirm the district court's order. May it please the court. I represent the city of Alamo. On the only issue raised against the city, which involves a liberty interest that plaintiff's appellants are claiming, there's four points I'd like to raise or make. One, Guerra did not allege a liberty interest at the district court level, did not identify facts to establish a liberty interest claim at the district court level, did not establish or identify facts to establish a customer policy of the city at the district court level, and did not challenge the district court's ruling that he did not identify facts to establish a customer policy of the city. Your question earlier about jurisdiction, I suspect you are curious as to why I didn't challenge that. I considered it. However, the language that he had in the notice of appeal was, quote, plaintiff in the above-named case hereby appeals to the U.S. Court of Appeals for the Fifth Circuit from the final judgment in the order granting defendant Baudelio Castillo's 12B6 motion to dismiss. I did my research. Smith v. Berry, 502 U.S. 244, basically gives a lot of leeway, whether it's a pro se plaintiff or appellant or an appellant represented by counsel. I did not want to lose credibility with the court by saying there is none. When the issue came up, I mentioned it to the clerk, and there was a discussion about whether I was even a proper party. In the end, I did not want to waive briefing to the court, so I did not challenge that to the court. I appreciate that, that you looked into it and you responded now orally. So you aren't saying that the city was misled or prejudiced in any way. Well, I would like to say we might have been misled, we might have suffered some prejudice, but the issues are the issues. In other words, ultimately, you have to determine those issues as the law reads. But we also do have to just clarify where we stand on Rule 4. And I'd like some clarification on that. However, I did not find any that makes it clear. I know you give a lot of leeway to appellants when they say, and it wasn't real clear, what happened was the district court granted them. By using the phrase final judgment, that comprehended the earlier dismissal? Final judgment in the order. If he had just said the order granting, he said the order granting defendant's motion, co-defendant's motion. But he said the final judgment in the order, which to me led it wide enough to where I couldn't really assert that, yes, it was not good enough. And then when they raised it for the first time, I was surprised when she raised the liberty interest at the court of appeals level. But at that point, I didn't want to waive challenging that. Because it's a pretty straightforward argument. Basically, they never raised the liberty interest at the district court level, and that was waived. The language was plaintiff will show that defendant Castillo, Alanis, Martinez, and Mesa, action as set forth in the factual allegations incorporated here, resulted in equal protection of due process, deprivation, and violation of the 14th Amendment. That's all he said. Never said a liberty interest. Never used the word liberty once. No, I'm sorry. He used it once when he said Castillo and Martinez wrongfully deprived plaintiff of his physical liberty. That's the only time he used the word liberty. The facts on the establishing it, what she wants to allege, basically, is that the fact that he was arrested should play into whether he was deprived of a liberty interest. What we've got to remember is that the liberty interest applies to how he was terminated, not what facts led up to the termination. He admitted, he agreed, it was an administrative appeal when he was terminated. He asked for the appeal. The final decision rests with the city manager, not with the police chief. What you're complaining about in a liberty interest claim is that the discharge is in a manner that creates a false and defamatory impression and precludes further employment opportunities. It's the manner of discharge, not the reasons for the discharge. When he was discharged, city manager just said, thank you very much. You're discharged. Go away. He did not say, you were arrested, we don't put up with that, you are guilty, and you're fired. Had he done that, he would have been entitled to a liberty interest claim or liberty interest request for a name-clearing hearing solely to clear his name, stand up and say, I did not do it, and everybody moves away. That's all it is. He only complained about the police chief's actions relating to his arrest and the city manager's termination notice. He wants to put them all together. And he agrees. All he was given was he was given notice that he was terminated immediately. He requested, at page 273, he requested an administrative hearing, quote, plaintiff counsel requested an administrative hearing to discuss the false allegations that had wrongfully resulted in his dismissal. Perhaps it was a bad reason for getting him terminated, but that's not the same as a liberty interest as to whether you can request to be heard to clear your name afterwards. When you get to the Monell policy violations, he alleged the city failed to investigate, train, or supervise your discipline. Not a 14th Amendment liberty interest claim. He alleged the city permitted the chief unrestricted control. Again, not a liberty interest claim. The city manager had absolute right to approve or disapprove personnel matters. Agreed. That's what the city manager does. He's the final word. Distinguish, remember from Flores versus Cameron County, there's a difference between a final decision maker and a final policy maker. The fact that he makes the final decision on any terminations, that's it. That's all you get. So he hadn't identified a right to appeal that further administrative decision, and it wasn't a customer policy on a liberty interest claim. And the fourth point was that he alleged the violation of a due process. But, again, he's only complaining about the facts that led to his termination, not actions in the termination process. It's the process of termination that gives you a liberty interest. And then, finally, he didn't even challenge on the appeal that the district court's ruling that he did not identify action by a city policy maker. He does make a passing reference to challenging whether it's a fact issue for summary judgment versus a fact issue for a motion to dismiss. 12B6, motion to dismiss, is only on the pleadings. He references facts as though facts only come from evidence. No, there's facts alleged in the pleadings and facts alleged in evidence. What does the charter say about that? The charter, and we reference the charter for purposes because they reference the charter. What the charter basically says is that the chief is a chief administrative officer of the Department of Police. He is not the final policy maker. He is hired by the city commission and terminated by the city commission, so whatever happens to him falls under that rubric. But as far as his decisions, he's only administrative officer. He's not the final policy maker. The only action by the city manager was in terminating Guerra because the city manager was the final decision maker on that issue. There was confusion about who the city manager was, correct? I'm sorry? Wasn't there confusion about who the city manager was? No. What's his name? Ozuna. Ozuna. There was a problem in identifying or describing him, I think. They've never really made it. I'm aware of it, but so when they mention things, it didn't occur to me as being unusual because it didn't. But you who are not familiar with this city's business, you may not have been able to recognize that because he uses the term Ozuna and then doesn't call him city manager and then at some point he does reference city manager. But I agree, it's not particularly clear as to what his role really was. But in any case, 1983 liability will extend only to a deliberately indifferent customer policy of the city and they never identified any, particularly for the liberty interest claim. He never provided any facts to establish there was any false or stigmatizing allegations made by a city policymaker as part of his discharge. The termination charges were made public. He never identified facts in the petition, in the complaint, to indicate that the charges were made public by the city policymaker, that he requested a name-clearing hearing as opposed to an administrative appeal of his termination, that the request for a hearing was denied, he never requested it so it couldn't have been denied, or that he was ever denied a liberty interest. Those facts, those allegations were never even made in the complaint. And without any of that, he hasn't identified a liberty interest claim against the city. You heard opposing counsel ask, would he have had a state law appellate right after his name-clearing hearing was denied? No. You're mixing two things, name-clearing hearing and administrative hearing. Right, but what was denied was the name-clearing hearing. No. No. He never asked for a name-clearing hearing. What was denied was the administrative hearing. He wanted to appeal his termination. Right. That's what was denied. And he does not have an appeal of the administrative hearing. No. The administrative hearing under the city charter only says that the city manager is the final decision-maker on his termination. And so once a city manager makes that determination, he cannot appeal the administrative termination, whether he should have been terminated or not. On the name-clearing hearing, he never asked for one. Had he asked for one, and whether he would have been able to appeal that, I don't know. That's something that hadn't ever come up because he never asked for it. I'm sorry. My time's up. If there's nothing further, I would just ask that the Court affirm the district court's order granting the city's motion to dismiss. Thank you. Appellee incorrectly asserts that appellant waived his liberty interest by not raising it before the district court. Appellees are wrong for two reasons. One, arguments raised for the first time on appeal may be heard by the Court of Appeals because it has discretion to be exercised on the facts of individual cases pursuant to Singleton v. Wolf, Supreme Court case. Two, failing to address appellant's liberty interest claim would result in a manifest injustice because appellant's argument involves a pure issue of law, as stated by this Court in Bansanella v. Advanced Cardiovascular System. This case raises an issue of constitutional magnitude and constitutes an extraordinary circumstance because if this Court fails to consider appellant's arguments, this would not only be a miscarriage of justice and cause an inequity to appellant, but also implicates matters of federalism and respect for independent democratic institution. Appellant's case is one that raises an issue of constitutional magnitude in that officers are now more than ever abusing their power and influence to circumvent the due process of law right, a right guaranteed by the Constitution. This Court cannot allow police officers like Appellant Castillo to get away with unabashedly violating the constitutional rights of appellant merely because appellant refused to violate the rule of law and his code of ethics. Just one month ago, five officers killed Tyree Nichols in a display of staggering brutality. This is what happens when police officers have unfettered power. Not only does corruption run rampant, but senseless violence ensues. Here, appellant stuck to his code of ethics and the oath he took to as a police officer, to protect and serve. Appellant chose to do the right thing by instructing his subordinate patrol officer to carry out the lawful arrest of an individual who committed a DWI and that just so happened to be a political ally of Appellant Castillo. Justices of the Court, you can send a message today to all officials that laws do not apply differently and Section 1983 malicious prosecution claims that the Constitution is the supreme law of the land, that officials cannot abuse their power to perpetrate corruption, and that the rule of law may not be circumvented for the improper purpose of depriving a person of his liberty, liberty interest in practicing his profession, or and by stripping him of his property interest as pension. Regardless of political party association or race, in the interest of justice, we should be allowed to plead our case. We are asking for you to vacate the final order from the District Court and remand. Thank you so much. I appreciate the honor and privilege of being here to argue before you today. Would both sides before close of business tomorrow address our decision to Williger v. Reyna? It's at 4 Fedforth, 270. It was decided in 2021. In a letter brief before 5 o'clock tomorrow, please address the Terwilliger decision for Fedforth, 270. Both sides. Thank you, Justices. Thank you.